# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FELIPE GOMEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. |
| ) | |
| DETECTIVE STEVE RIHANI, Star #20381, ) | |
| individually and in his official capacity; OFFICER ) | |
| H. GUITERREZ, Star #9690, individually and in his) | |
| official capacity; DETECTIVE CORRAL, Star ) | |
| #20946, individually and in his official capacity; ) | |
| OFFICER C.A. STENZAL, Star #15101, ) | |
| individually and in his official capacity; CITY OF ) | |
| CHICAGO d/b/a CITY OF CHICAGO POLICE ) | |
| DEPARTMENT; DETECTIVE J. KAMINSKI, Star) | |
| #2977, individually and in his official capacity; ) | |
| DETECTIVE J. ATAMIAN, Star #953, individually) | |
| and in his official capacity; and VILLAGE OF ) | |
| SCHAUMBURG d/b/a SCHAUMBURG POLICE ) | |
| DEPARTMENT, ) | JURY TRIAL REQUESTED |
| ) | |
| Defendants. ) | |

## COMPLAINT

NOW COMES Plaintiff, FELIPE GOMEZ, by and through his attorneys, Anthony J. Peraica & Associates, Ltd., and for his complaint at law states as follows:

## JURISDICTION AND VENUE

1. This action is brought under 42 USC §1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2. This Court has jurisdiction pursuant to 28 U.S.C.§§1331 and 1343(3) and, supplemental jurisdiction of pendent state claims pursuant to 28 USC §1367.

3. Venue is proper under 28 U.S.C. §1391(b). The parties reside and all

1

transactions and occurrences complained of occurred in the Northern District of Illinois.

## PARTIES

4. Plaintiff, Felipe Gomez, was at all times relevant a resident of the City of Chicago, County of Cook, State of Illinois in the United States of America.

5. The Defendant City of Chicago is an Illinois public entity duly organized and existing under the laws of the State of Illinois.

6. Defendant City of Chicago maintained, managed, and/or operated the City of Chicago Police Department.

7. At all times relevant hereto, Defendant Detective Steve Rihani was employed by the City of Chicago Police Department as a detective. Defendant Rihani is sued in his official and individual capacities.

8. Defendant Rihani was acting under color of law at all times relevant hereto.

9. At all times relevant hereto, Defendant Officer H. Guiterrez, Star #9690, was employed by the City of Chicago Police Department as a police officer. Defendant Guiterrez is sued in his official and individual capacities.

10. Defendant Guiterrez was acting under color of law at all times relevant hereto.

11. At all times relevant hereto, Defendant Detective Corral, Star #20946, was employed by the City of Chicago Police Department as a police detective. Defendant Corral is sued in his official and individual capacities.

12. Defendant Corral, was acting under color of law.

13. At all times relevant hereto, Defendant Officer C.A. Stenzal, Star #15101, was

employed by the City of Chicago Police Department as a police officer. Defendant Stenzal is sued in his official and individual capacities.

14. Defendant Stenzal was acting under color of law.

15. To the extent that there were other unnamed officers and/or supervisors of the City of Chicago Police Department that were involved in the events giving rise to Plaintiff's claims, Plaintiff will seek leave to amend his complaint upon learning the identity of the unknown Defendants, so as to properly allege their names.

16. Defendant City of Chicago is the employer and principal of Defendants, Detective Rihani, Detective Corral, Officer Guiterrez, Officer Stenzal, and Unknown Officers of the Chicago Police Department, all of whom were acting under color of law.

17. The Defendant City of Chicago is the employer of Defendants Rihani, Corral, Guiterrez and Stenzal, and is sued herein on a theory of *respondeat superior* with regard to the Illinois common law claims. Further, it is a necessary party to this action and is a body politic and corporate because the City of Chicago has a responsibility to indemnify the Individual Defendants' liability for official-capacity judgments, whether settled or litigated, as stated in ***Carver v. Sheriff of LaSalle County***, 324 F.3d 947 (7th Cir. 2005).

18. At all times relevant to this Complaint, Defendant officers of the City of Chicago Police Department acted under color of the Illinois Compiled Statutes, and, the custom, policies and procedures of the City of Chicago, County of Cook, and the State of Illinois.

19. At all times relevant hereto, Defendant Detective J. Kaminski, Star #2977, was employed by the Village of Schaumburg Police Department as a police detective. Defendant Kaminski is sued in his official and individual capacities.

20. Defendant Kaminski was acting under color of law.

21. At all times relevant hereto, Defendant Detective J. Atamian, Star #953, was employed by the Village of Schaumburg Police Department as a police detective. Defendant Atamian is sued in his official and individual capacities.

22. Defendant Atamian was acting under color of law.

23. At all times herein mentioned, the Village of Schaumburg was a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the Village of Schaumburg maintained, managed, and/or operated the Village of Schaumburg Police Department.

24. The Defendant Village of Schaumburg is the employer of Defendants Kaminski and Atamian, and is sued herein on a theory of *respondeat superior* with regard to the Illinois common law claims. Further, it is a necessary party to this action and is a body politic and corporate because the Village of Schaumburg has a responsibility to indemnify the Individual Defendants' liability for official-capacity judgments, whether settled or litigated, as stated in *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2005).

## FACTS

25. The Chicago Police Department, including Defendants Detective Rohani, Detective Corral, Officer Guiterrez and Officer Stenzal, worked in conjunction with the Schaumburg Police Department, including Defendants Detective J. Kaminski and Detective J. Atamian, formulating plans for controlled sales of alleged stolen car parts to Gomez Recycling and targeting its owner, Plaintiff Felipe Gomez.

26. The Defendants jointly worked together on a sting operation called "Hot Pipes".

27. The Defendants engaged in multiple sales of catalytic converters and other car parts to Plaintiff's business, Gomez Recycling, from October 10, 2014 to and including April 1, 2015.

28. During the above time period, the Defendants on occasion would encounter Plaintiff at Gomez Recycling or speak with him over the phone.

29. Defendants claimed that they either told Plaintiff or made him aware that the parts they were selling to Gomez Recycling were stolen.

30. The Defendants improperly obtained search warrants to electronically tap/eavesdrop on the telephone lines of the Plaintiff and his business.

31. Defendants Rihani and Stenzel provided deliberately false information to obtain use of the eavesdropping device and obtain search warrants for Plaintiff's property.

32. Upon information and belief, Defendants lacked probable cause for the search warrants. The tactics used by the Defendants violated the Plaintiff's constitutional rights under the Fifth, Sixth, Fourteenth and Fourth Amendments to the United States Constitution.

33. On April 1, 2015, Plaintiff Felipe Gomez was arrested and incarcerated.

34. Plaintiff Felipe Gomez was charged with multiple counts of theft, aggravated possession of a stolen motor vehicle, money laundering, and conspiracy to commit financial crimes enterprise.

35. Defendants caused Plaintiff to be arrested and charged criminally without just cause or provocation and in violation of Plaintiff's Constitutional rights and Illinois law.

36. As a direct and proximate result of the above acts, Plaintiff was deprived of his rights secured by the Fourth and Fourteenth Amendment when he was interrogated while under

medical care, interrogated without Miranda rights, arrested, and Defendants are using unlawful evidence against the plaintiff.

37. As a result of the Defendants' conduct, Plaintiff suffered great mental anguish, humiliation, depression, degradation, physical and emotional pain and suffering, inconvenience, future pecuniary losses and other consequential damages.

38. The criminal trial occurred over several days, October 18, 2018, January 19, 2019, March 11, 2019 and September 27, 2019.

39. After the State's case in chief for the criminal trial concluded, Gomez's counsel moved for a directed finding, which was granted.

40. On September 27, 2019, Plaintiff Felipe Gomez was acquitted and found not guilty of all charges.

## COUNT I
### (42 .S.C § 1983 – Malicious Prosecution 4th Amendment)

41. Plaintiff restates and re-alleges paragraphs 1 through 40 above as if fully set forth herein.

42. In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers, while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, caused Plaintiff to be deprived of his Fourth Amendment right, as provided for in the U.S. Constitution.

43. The misconduct described in this Count was objectively unreasonable, without probable cause and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

44. The Defendant Officers, while acting individually, jointly and in conspiracy, fabricated evidence against the Plaintiff to allow for criminal prosecution.

45. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago Police Department and Schaumburg Police Department and by extension the Defendants City of Chicago and Village of Schaumburg.

46. As a result of this violation, the Plaintiff suffered pain and injury, and a long drawn out criminal trial, as well as, deprivation of liberty and severe emotional distress.

WHEREFORE, Plaintiff demands substantial compensatory damages against Defendants, plus attorney's fees and costs, liquidated damages as Defendants acted with malice and without probable cause, and any such other and additional relief as this Court deems just and equitable.

## COUNT II
**(42 U.S.C § 1983 -- Conspiracy to Deprive Constitutional Rights)**

47. Plaintiff restates and re-alleges paragraphs 1 through 40 above as if fully set forth herein.

48. Upon information and belief, in committing the acts alleged in the preceding paragraphs, Defendant Officers reached an agreement to falsely arrest and frame Plaintiff for crimes he did not commit, and to thereby deprive Plaintiff of his constitutional rights, all as described more fully throughout this Complaint.

49. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

50. The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of Plaintiff.

51. As a result of this conduct, Plaintiff suffered pain and injury, as well as, deprivation of liberty and severe emotional distress.

WHEREFORE, Plaintiff demands substantial compensatory damages against Defendants, plus attorney's fees and costs, liquidated damages and any such other and additional relief as this Court deems just and equitable.

## COUNT III
### *(Monell* Claim Against Defendant City of Chicago)

52. Plaintiff restates and re-alleges paragraphs 1 through 51 above as if fully set forth herein.

53. The constitutional violations set forth in Counts I through II were caused by the deliberate indifference of the City of Chicago ("City") such that the City itself is liable for the violations of Plaintiff's constitutional rights.

54. It is the culture, custom and/or widespread practice of the Chicago Police Department that it does not conduct investigations into all cases of officer misconduct that are brought to the attention of the department or the City of Chicago.

55. Only the most egregious violations subject City of Chicago Police Officers to discipline, despite the City of Chicago Police Department Rules of Conduct providing that any violation of a law or ordinance is subject to discipline.

56. The conduct of the Defendant Officers in violating Plaintiff's constitutional rights was undertaken pursuant to the policy and widespread practices of the City of Chicago Police Department in that:

   a. The Defendant officers violated the Rules of Conduct of the Chicago Police Department Rule 5: Failure to perform any duty, by failing to properly investigate; upon information and belief, none of the officers have been disciplined;

8

b. The Defendant officers violated the Rules of Conduct of the Chicago Police Department Rule 11: Incompetency of inefficiency in the performance of duty by failing to consider other leads or properly investigating the situation; upon information and belief, none of the officers have been disciplined;

c. The Defendant Officers violated the Rules of Conduct of the Chicago Police Department Rule14: making a false report, written or oral; upon information and belief, none of the officers have been disciplined;

d. The Defendant Officers violated the Rules of Conduct of the Chicago Police Department Rule 22: Failure to report to the Department any violation of Rules and Regulations or any other improper conduct which is contrary to the policy, orders or directives of the Department; upon information and belief, none of the officers have been disciplined;

e. The Defendant officers violated the Law Enforcement Code of Ethics—"As a law enforcement officer, my fundamental duty is to serve mankind . . . to protect the innocent against deception, the weak against oppression or intimidation . . .and to respect the Constitutional rights of all men to liberty, equality and justice." Upon information and belief, none of the defendant officers have been disciplined;

f. As a matter of both policy and practice, the City of Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately discipline, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

g. As a matter of both policy and practice, the City facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading its officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff;

h. As a matter of both policy and practice, the City fails to enforce General Order G04-01 and related special orders on how preliminary investigations are to be conducted which lead to the wrongful arrest and criminal trial of the Plaintiff;

i. As a matter of policy and practice, the City fails to enforce General Order G04-02 and related special orders on how to process and protect a crime scene from contamination which lead to the wrongful arrest and criminal trial of the Plaintiff;

j. As a matter of policy and practice, the City fails to enforce General Order G04-03 and related special order on how to conduct interrogations which lead to the wrongful arrest and criminal trial of the Plaintiff;

k. As a matter of policy and practice, the City allows police officers to coach and/or intimidate witnesses leading to wrongful arrests and criminal trials, similar to what Plaintiff had to undergo;

l. The City maintained broken and deficient systems for supervising and disciplining its officers;

m. The City ignored the recognized and important need to track, discipline and control officers and therefore is ineffective at deterring misconduct or holding

      officers accountable when the officers violate the law or Chicago Police

      Department policy; and

   n. Other acts of negligence.

57. Defendant City maintained these policies and widespread practices in deliberate indifference to the foreseeable consequences including the violations of Plaintiff's rights.

58. Defendant City's deliberate indifference to these polices and widespread practices were the moving force behind the violation of Plaintiff's constitutional rights.

59. As a result of Defendant City's conduct in causing the constitutional violations, Plaintiff suffered pain and injury, as well as, deprivation of liberty and severe emotional distress.

     WHEREFORE, Plaintiff demands substantial compensatory damages against Defendant City of Chicago, plus attorney's fees and costs, and any such other and additional relief as this Court deems just and equitable.

## COUNT IV
### (*Monell* Claim Against Defendant Village of Schaumburg)

60. Plaintiff restates and re-alleges paragraphs 1 through 40 above as if fully set forth herein.

61. The constitutional violations set forth in Counts I through II were caused by the deliberate indifference of the Village of Schaumburg ("Village") such that the Village itself is liable for the violations of Plaintiff's constitutional rights.

62. It is the culture, custom and/or widespread practice of the Schaumburg Police Department that it does not conduct investigations into all cases of officer misconduct that are brought to the attention of the department or the Village of Schaumburg.

63. Only the most egregious violations subject Village of Schaumburg Police Officers to

discipline, despite the Village of Schaumburg Police Department Rules of Conduct providing that any violation of a law or ordinance is subject to discipline.

64. The conduct of the Defendant Officers in violating Plaintiff's constitutional rights was undertaken pursuant to the policy and widespread practices of the Village of Schaumburg.

65. Defendant Village maintained these policies and widespread practices in deliberate indifference to the foreseeable consequences including the violations of Plaintiff's rights.

66. Defendant Village's deliberate indifference to these polices and widespread practices were the moving force behind the violation of Plaintiff's constitutional rights.

67. As a result of Defendant Village's conduct in causing the constitutional violations, Plaintiff suffered pain and injury, as well as, deprivation of liberty and severe emotional distress.

WHEREFORE, Plaintiff demands substantial compensatory damages against Defendant Village of Schaumburg, plus attorney's fees and costs, and any such other and additional relief as this Court deems just and equitable.

## COUNT V
### (745 ILCS 10/9-101 – Indemnification)

68. Plaintiff restates and re-alleges paragraphs 1 through 40 above as if fully set forth herein.

69. Defendant City of Chicago is the employer of Defendant Officers Rihani, Guiterrez, Corral and Stenzal.

70. The Defendant Officers committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago.

WHEREFORE, Plaintiff demands that if any non-punitive damages, fees or costs are awarded against the Defendant Officers, then the City of Chicago should be liable to pay the award.

## COUNT VI
## (745 ILCS 10/9-101 – Indemnification)

71. Plaintiff restates and re-alleges paragraphs 1 through 40 above as if fully set forth herein.

72. Defendant Village of Schaumburg is the employer of Defendant Officers Kaminski and Atamian.

73. The Defendant Officers committed the acts alleged above under color of law and in the scope of their employment as employees of the Village of Schaumburg.

WHEREFORE, Plaintiff demands that if any non-punitive damages, fees or costs are awarded against the Defendant Officers, then the Village of Schaumburg should be liable to pay the award.

## SUPPLEMENTAL STATE LAW CLAIMS

## COUNT VII
## (Malicious Prosecution)

74. Plaintiff restates and re-alleges paragraphs 1 through 67 above as if fully set forth herein.

75. Defendant Officers caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause.

76. These judicial proceedings were instituted and/or continued maliciously and without probable cause, resulting in injury.

77. The Defendant accused Plaintiff of criminal activity knowing those accusations to be without probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

78. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

79. The Defendant Officers performed the actions complained of while on duty and in the employ of Defendant City or Village, and while acting within the scope of their employment.

80. As a result of this misconduct, Plaintiff sustained and continues to sustain pain and injury, as well as, deprivation of liberty, damage to reputation, pain and suffering and emotional distress.

WHEREFORE, Plaintiff demands substantial compensatory damages and liquidated damages in an amount sufficient to deter similar misconduct, jointly and severally from the Defendants, plus costs, attorney's fees and whatever additional relief this Court deems just and equitable.

## COUNT VIII
**(Intentional Infliction of Emotional Distress)**

81. Plaintiff restates and re-alleges paragraphs 1 through 80 above as if fully set forth herein.

82. The above-detailed conduct by the Defendant Officers was extreme and outrageous.

83. Defendant Officers performed the acts detailed above with the intent of inflicting severe emotional distress on Plaintiff with knowledge of the high probability that the conduct would cause such distress.

84. As a direct and proximate result of this conduct, Plaintiff did in fact suffer severe emotional distress.

WHEREFORE, Plaintiff demands substantial compensatory damages and liquidated damages in an amount sufficient to deter similar misconduct, jointly and severally from the Defendants, plus costs, attorney's fees and whatever additional relief this Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

s/ Anthony J. Peraica

Anthony J. Peraica, ARDC NO.: 6186661
Anthony J. Peraica & Associates, Ltd.
5130 S. Archer Avenue
Chicago, IL   60632
(773) 735-1700