UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FELIPE GOMEZ, ) | |
| ) | |
| Plaintiff, ) | No. 1:19-CV-08437 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| DETECTIVE STEVE RIHANI, OFFICER ) | |
| H. GUITERREZ, a/k/a OFFICER H. ) | |
| GUTIERREZ, DETECTIVE CORRAL ) | |
| OFFICER C.A. STENZAL, CITY OF ) | |
| CHICAGO d/b/a CITY OF CHICAGO ) | |
| POLICE DEPARTMENT, DETECTIVE ) | |
| J. KAMINSKI, DETECTIVE J. ) | |
| ATAMIAN, and VILLAGE OF ) | |
| SCHAUMBURG d/b/a SCHAUMBURG ) | |
| POLICE DEPARTMENT ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Felipe Gomez was arrested after the City of Chicago and the Village of Schaumburg teamed up to perform a sting operation in which the police made controlled sales of stolen auto parts. Gomez was eventually acquitted on all charges and he now brings this civil rights lawsuit under 42 U.S.C. § 1983 against several police officers for arresting and detaining him without probable cause in violation of the Fourth Amendment.[1] R. 1.[2] He also asserts *Monell* claims against Chicago and

---

[1]This Court has federal question jurisdiction over the § 1983 claim under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law malicious prosecution claim under 28 U.S.C. § 1367.

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

Schaumburg. On top of the federal law claims, Gomez advances a malicious prosecution claim against the officers and seeks indemnification from Chicago and Schaumburg.³ Chicago and Schaumburg have each moved to dismiss various claims; collectively, their motions in effect seek to dismiss the entire complaint. R. 21, R. 24. For the reasons explained below, the motions are granted in part and denied in part.

## I. Background

For the purposes of this motion, the Court accepts as true the allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Chicago officers targeted by the Complaint are Detective Rihani, Detective Coral, Officer Gutierrez,⁴ and Officer Stenzal. R. 1, Compl. ¶¶ 16–17. On the Schaumburg side are Detective Kaminksi and Detective Atamian. *Id.* ¶¶ 20–24. Together, those detectives and officers worked on a sting operation called "Hot Pipes." *Id.* ¶¶ 26–27. From October 2014 to April 2015, the Defendants "engaged [in] multiple sales" of car parts to Gomez's eponymous business, Gomez Recycling. *Id.* ¶ 27. Over those several months, the Defendants met with Gomez in person several times and also spoke to him over the phone. *Id.* ¶¶ 28–29.

According to Gomez, Detective Rihani and Officer Stenzal deliberately provided false information to obtain a wiretap on Gomez's phones, and warrants to search his property. Compl. ¶¶ 30–31. The operation led to Gomez's arrest in April 2015. *Id.* ¶ 33. He was detained and interrogated (though the Complaint does not say

---

³The Complaint initially included a claim for intentional infliction of emotional distress, but Gomez has since voluntarily dismissed that claim. R. 30 at 15.
⁴Officer Gutierrez apparently appears on some documents as "Gutierrez" and other documents as "Guiterrez".

for how long). *Id.* ¶¶ 33, 36. Gomez was eventually charged in state court with multiple counts of theft, aggravated possession of a stolen motor vehicle, money laundering, and conspiracy to commit financial crimes. *Id.* ¶ 34. The case went to trial and at the end of the State's case-in-chief, Gomez moved for a directed verdict—which the judge granted. *Id.* ¶ 39. The acquittal on all charges happened at the end of September 2019. *Id.* ¶ 40.

In this lawsuit, Gomez alleges that all of the individual Defendants worked together to formulate plans for the controlled sale of alleged stolen car parts to his recycling business. Compl. ¶ 25. He also alleges that the Defendants, acting individually and jointly, improperly obtained search warrants without probable cause. *Id.* ¶¶ 32, 36. With regard to the municipalities, according to Gomez, the Chicago Police Department and the Schaumburg Police Department both have widespread practices to investigate only the most egregious cases of police-officer misconduct. *Id.* ¶¶ 54–55, 62–63. Those practices, according to the Complaint, enabled the individual law enforcement officers to violate Gomez's constitutional rights. *Id.* ¶¶ 58, 66.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v.*

3

*Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (cleaned up).[5] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir.2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)) (cleaned up).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief can be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

As a threshold matter, the Defendants argue that Count 1 fails to state a claim because Gomez tries to fit a malicious prosecution claim under the Fourth Amendment. R. 22, Schaumburg Br. at 10; R. 24, Chicago Br. at 4. The Defendants cite *Manuel v. City of Joliet* (after it returned from the Supreme Court) to contend that "there

---

[5]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

4

is no such thing as a constitutional right not to be prosecuted without probable cause." *Manuel v. City of Joliet, Ill.,* 903 F.3d 667, 670 (7th Cir. 2018) (cleaned up). As far as that goes, that is right: the Seventh Circuit made clear that "Fourth Amendment malicious prosecution" is not a thing. *Id.* So if Gomez were stuck with the heading that he put on Count 1—"Malicious Prosecution 4th Amendment"—the claim would have to be dismissed.

But it is clear from the allegations in the Complaint that Gomez is actually advancing a claim for an unlawful seizure in violation of the Fourth Amendment—notwithstanding the heading. Ideally, the Complaint would have explicitly said so. Generally speaking, however, a "complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error." *Rabe v. United Air Lines, Inc.,* 636 F.3d 866, 872 (7th Cir. 2011). The legal-theory label was wrong, but all the factual allegations for the no-probable-cause arrest are there: Gomez alleges that the Defendants "improperly obtained search warrants" by providing "deliberately false information" and using "unlawful" and "fabricated" evidence. Compl. ¶¶ 30–31, 36, 44. Based on all that, the Defendants "lacked probable cause for the search warrants," which in turn led to Gomez's arrest and detention. *Id.* ¶¶ 32–33, 35–36. Not surprisingly, in his response brief, Gomez now clarifies that he is bringing a Fourth Amendment seizure claim for false arrest and unreasonable pretrial detention. R. 30, Pl. Resp Br. at 7. So the inapt heading on its own does not doom Count 1.

5

### A. Personal Involvement

Next, the Defendants contend that Gomez fails to adequately allege each Defendant's personal liability as required by 42 U.S.C. § 1983 and that he instead relies on impermissible "group" pleading. Schaumburg Br. at 4–10. "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) (cleaned up). "Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." *Id.* (cleaned up).

In the particular circumstances of this case, Gomez has not relied on impermissible group pleading. Instead, this is the kind of case, and the kind of setting, in which it is permissible to direct all of the relevant allegations against all of the individual Defendants. *See Brooks,* 578 F.3d at 582 (certain allegations satisfied personal involvement requirement when directed at all individual defendants). Here, Gomez alleges that that Defendants "worked in conjunction" in "formulating plans for the controlled sales of alleged stolen car parts to Gomez Recycling." Compl. ¶ 25. He also alleges that the "Defendants jointly worked together on a sting operation called 'Hot Pipes.'" *Id.* ¶ 26. Where the Complaint refers to "the Defendants," Gomez is directing those allegations against *all* of the individual Defendants. In a case accusing a joint (but not sprawling) sting operation by two law enforcement agencies as a sham in-

6

vestigation, there is nothing wrong with accusing all of the Defendants of the misconduct. For this type of case, and on these facts, this is an adequate way to plead individual responsibility at the motion to dismiss phase. *See Brooks*, 578 F.3d at 582. Under the notice-pleading regime established by Rule 8(a)(2) and as described by *Twombly*, the Defendants have been given "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. It is true that discovery might very well fail to link some or all of the Defendants to specific misconduct, and then those Defendants (or all of them) will drop out at the summary judgment stage. But for now, the individual Defendants can reasonably answer and defend against Gomez' claims.[6]

## B. Facts versus Conclusions

Aside from the purported group-pleading problem, the Defendants also argue that the allegations fail to plausibly state a deprivation of constitutional rights. Schaumburg Br. at 9. To the defense's way of thinking, Gomez makes only threadbare, conclusory accusations that recite the elements of a cause of action. Not so. Gomez alleges specific facts that take the Complaint beyond threadbare, conclusory recitations:

---

[6]The primary case cited by the defense, *Carter v. Dolan*, No. 08 C 7464, 2009 WL 1809917, at *2 (N.D. Ill. June 25, 2009), is distinguishable. There, the plaintiff alleged that "all defendant police officers ... *either* entered the second floor apartment *or* facilitated entry into the second floor apartment," and that "approximately *six to ten* search team members physically entered the second floor apartment," even though the complaint named nine individual defendants. *Id.* at *1 (emphasis added). It was not at all clear that each officer could be responsible for acting jointly with the other officers. In contrast, Gomez adequately alleges that all of the Defendants worked together on the sham sting operation. Compl. ¶¶ 25–26, 44.

7

- The Defendants "formulated plans" for the controlled sale of alleged stolen car parts to Defendants business, Compl. ¶ 25.

- The Defendants made multiple sales of catalytic converters to Gomez, *id* ¶ 27, but fabricated evidence purporting to show that Gomez knew he was buying stolen parts, *id.* ¶ 28.

- The Defendants provided "fabricated evidence" to support the application for an eavesdropping device and search warrant. *Id.* ¶¶ 30, 44.

- As a result, Gomez was arrested, detained, and interrogated without probable cause. *Id.* ¶¶ 32–36.

This is "sufficient factual matter" to go beyond a mere recitation of conclusory legal elements. *Iqbal*, 556 U.S. at 678.

### C. Conspiracy

The Defendants also move to dismiss the conspiracy claim (Count 2) solely on the grounds that no underlying constitutional deprivation was adequately alleged. Schaumburg Br. at 11, Chicago Br at 5. For the reasons discussed in the preceding section, that is wrong. Gomez has adequately stated a claim for unlawful search and seizure in violation of the Fourth Amendment. So the conspiracy claim also survives.

### D. *Monell* Claims

The final targets of the dismissal motion are the *Monell* claims against Chicago and Schaumburg (Counts 3 and 4). To adequately state a *Monell* claim, Gomez must allege: (1) the deprivation of an underlying substantive constitutional right; (2) the existence of an official policy or other governmental custom; and (3) that this policy or custom was the moving force behind the deprivation of her substantive constitutional rights. *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012). "A plain-

8

tiff can establish an official policy through (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* at 834 (cleaned up).

Although Gomez has adequately alleged an underlying deprivation of a constitutional right, the *Monell* claims flounder on the failure to adequately allege a widespread practice that caused the deprivation. Schaumburg Br. at 12, Chicago Br. at 6. According to the Complaint, it "is the culture, custom and/or widespread practice of the [Chicago and Schaumburg] Police Department … that it does not conduct investigations into all cases of officer misconduct that are brought to [its] attention," and that "[o]nly the most egregious violations" are subject to discipline. Compl. ¶¶ 54–55, 62–65. With regard to Chicago only, Gomez also alleges that his constitutional rights were violated pursuant to the "policy and widespread practice[]" of ignoring certain written policies, including the Rules of Conduct of the Chicago Police Department, the Law Enforcement Code of Ethics, and other CPD General Orders. Compl. ¶ 56.[7]

None of this is enough to adequately state a *Monell* claim. Gomez's theory is that two separate municipalities engaged in such widespread failure to investigate officer misconduct that the failure caused the individual officers to violate Gomez's

---

[7]In his response brief, Gomez also attached a 2017 Department of Justice Investigation report on the Chicago Police Department. R. 30-1 at 7, Pl. Resp. Br., Exh. 3. But the report is outside of the current pleadings, so it cannot be considered. Fed. R. Civ. P. 12(d). In any event, the Justice Department report says nothing about the Schaumburg Police Department.

9

constitutional rights via the sham sting operation. This theory relies on much too conclusory a set of allegations to plausibly state an adequate claim. Remember that the *Monell* theory must be that the *two* separate Police Departments together engage in such faulty internal investigations that the two separate Police Department policies together caused the rights violation. Without more concrete factual allegations, the allegations are too implausible to support a *Monell* claim. Nor does Gomez connect the failure to investigate officer misconduct to his *specific* case. He does not allege, for example, that either jurisdiction has a practice of specifically ignoring false search warrants or faulty sting operations. The broad written policies in Paragraph 56 of the Complaint are just conclusions that parrot the language of particular Police Department rules. *See* Compl. ¶ 56.

Having said that, because Gomez has yet to amend the complaint, the dismissal of the *Monell* claims is without prejudice. If he can fix the allegations, then he may propose the filing of an amended complaint. (For example, by making allegations that tie the factual findings in the Justice Department report to the type of alleged misconduct here.) Or if discovery reveals some facts that might support a *Monell* claim, then he may propose an amended complaint at that point (subject to other litigation deadlines, like a Civil Rule 16(b) deadline to amend pleadings). Before doing so, however, Gomez should consider carefully whether it really makes sense to consume the time and resources needed to litigate *Monell* claims (which, if unsuccessful, might require him to pay costs related to the pursuit of those claims). In any event, the *Monell* claims are dismissed without prejudice at this time.

10

## IV. Conclusion

The Defendants' dismissal motions are granted against the *Monell* claims, which are dismissed without prejudice. All other claims survive. The parties shall file a proposed discovery status report by April 2, 2021. The Court will review it and set the discovery schedule going forward.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 26, 2021